JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 21-872 JGB (KKx)** | Date | July 23, 2021 |
|---|---|---|---|
| Title | ***The People of the State of California v. Credit One Bank, N.A., et al.*** | | |

Present: The Honorable      JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:     Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 12); and
(2) VACATING the July 26, 2021 Hearing (IN CHAMBERS)**

Before the Court is a Motion to Remand filed by Plaintiff The People of the State of California. ("Motion," Dkt. No. 12.)  The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15.  After considering all papers filed in support of and in opposition to the Motion, the Court GRANTS Plaintiff's Motion.  The July 26, 2021 hearing is VACATED.

## I.  BACKGROUND

On March 26, 2021, Plaintiff The People of the State of California filed a complaint against Defendant Credit One Bank, N.A. in the Superior Court of California for the County of Riverside. ("Complaint," Dkt. No. 1-1.)  The Complaint asserts one cause of action for unfair competition under Bus. & Prof. Code § 17200 for violation of the Rosenthal Act and California Right to Privacy. (Compl.)  On May 19, 2021, Defendant removed the action to federal court, arguing that this Court has ori inal jurisdiction over the action because it is completely preempted by the National Bank Act, 12 U.S.C. § 484, and its corresponding regulations, 12 C.F.R. § 7.4000. ("Notice of Removal," Dkt. No. 1 at 4-5.)

On June 10, 2021, Plaintiff filed the Motion.  On June 21, 2021, Defendant filed an Opposition. ("Opposition," Dkt. No. 14.)  Plaintiff replied on June 28, 2021. ("Reply," Dkt. No. 15.)

//

## II.   FACTUAL ALLEGATIONS

Plaintiff alleges the following facts.  Credit One Bank, N.A. ("Credit One") is a United States bank that primarily operates in credit cards.  (Compl. ¶ 3.)  Credit One originates credit cards for California residents, and subsequently seeks to collect those balances by contacting California residents by phone.  (Id.)

Credit One employs a third-party vendor, Alorica, Inc., to collect amounts alleged to be due and payable on Credit One credit card accounts.  (Id. ¶ 11.)  Credit One and its collection vendors used computer databases to keep track of debtors and their phone numbers.  (Id. ¶ 12.)  Credit One stores call data and receives daily calling activity reports from its vendors, including Alorica.  (Id. ¶ 13.)  Such vendors are required to report to Credit One every phone call they make when attempting to collect alleged consumer debt from California consumers.  (Id. ¶ 14.)  Credit One has a policy that allows its vendors to contact California consumers eight times per day for alleged consumer debt, plus an additional two times under certain circumstances.  (Id. ¶ 15.)

Plaintiff alleges that Credit One, through its vendors including Alorica, has engaged in collection campaigns involving unreasonable frequent and harassing phone call patterns and conduct, even after consumers' requests to stop the calls.  (Id. ¶¶ 17-25.)

## III.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction.  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute."  Gunn v. Minton, 568 U.S. 251, 256 (2013).  As such, a defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000.  See 28 U.S.C. §§ 1331, 1332.

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  Jackson v. Specialized Loan Servicing, LLC, 2014 WL 5514142, *6 (C.D. Cal. Oct. 31, 2014).  Courts must resolve doubts regarding removability in favor of remanding the case to state court.  Id.

## IV.   DISCUSSION

Plaintiff moves to remand the action, arguing that removal was improper because the Complaint does not raise a federal claim, preemption is not applicable, and The People are not

exercising visitorial authority in prosecuting Credit One under California consumer laws. (Mot.) For the reasons described below, the Court agrees.

## A. Complete Preemption

Defendant removed this action on the grounds that it is completely preempted by the National Bank Act ("NBA"), 12 U.S.C. § 484, and its corresponding regulations, 12 C.F.R. § 7.4000. (Notice of Removal at 4-5.) Defendant argues that even where a state court proceeding does not involve federal law on its face, the Supreme Court has recognized that the NBA has "the requisite pre-emptive force to provide removal jurisdiction." Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 11 (2003).

Plaintiff counters that preemption is an inappropriate basis for removal here. (Mot. at 6.) Under the well-pleaded complaint rule, "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue[.]" City of Oakland v. BP PLC, 969 F.3d 895, 903–04 (9th Cir. 2020) (emphasis in original). However, there are some exceptions to this rule: (1) where state law claims arise under federal law because federal law is a necessary element of the claim for relief; and (2) where federal law completely preempts a state-law claim, so that "the pre-emptive force of that statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim." Id. at 905. In the latter case, "a federal statute must provide the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." Id.

The Supreme Court has identified three statutes that meet this criteria: (1) Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; (2) Section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a); and (3) Sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85, 86, "which provide the exclusive cause of action for usury claims against national banks[.]" Id. at 905-06. Section 85 concerns the rate of interest on loans, discounts, and purchases, while Section 86 concerns usurious interest. 12 U.S.C. §§ 85, 86.

Plaintiff argues that these exceptions do not apply here. The Court agrees. Defendant has not established complete preemption over California Unfair Competition Law ("UCL") claims concerning unfair or deceptive debt collection practices. The Ninth Circuit has held that "states retain some power to regulate national banks in areas such as contracts, debt collection, acquisition and transfer of property, and taxation, zoning, criminal, and tort law." Bank of Am. v. City & Cty. of San Francisco, 309 F.3d 551, 558–59 (9th Cir. 2002).[1] As Plaintiff points out,

---

[1] "Nevertheless, because there has been a 'history of significant federal presence' in national banking, the presumption against preemption of state law is inapplicable." Bank of Am., 309 F.3d at 559.

**CIVIL MINUTES—GENERAL**   Initials of Deputy Clerk MG

Defendant misconstrues <u>Beneficial National</u> to suggest that the NBA broadly preempts state regulation of national banks.  (Mot. at 6 n.1.)  Not so.  As the Fifth Circuit has noted, "<u>Beneficial National</u> did not hold that the NBA preempts all state regulation of national banks."  <u>Hood ex rel. Mississippi v. JP Morgan Chase & Co.</u>, 737 F.3d 78, 90 (5th Cir. 2013).  "Instead, the holding was limited to state law usury claims."  <u>Id.</u>  While the NBA "limits the ways in which state law can regulate national banks, it is not meant to be a blanket ban on any state law that might impact a national bank."  <u>Id.</u>[2]

Despite its reliance on a series of cases implicating preemption of substantive laws, Defendant concedes that "the present issue before this Court is not whether Section 17200 is preempted."  (Opp'n at 11-12.)  Indeed, that argument would fail.  The Ninth Circuit has repeatedly rejected claims of preemption over California UCL claims concerning debt collection.  <u>See, e.g.</u>, <u>Aguayo v. U.S. Bank</u>, 653 F.3d 912 (9th Cir. 2011) (reversing dismissal of UCL claims after finding that state debt collections laws are not preempted by the NBA); <u>Gutierrez v. Wells Fargo Bank, NA</u>, 704 F.3d 712, 726 (9th Cir. 2012) (finding that UCL action challenging bank's misleading overdraft fee collection practices was not preempted by the NBA, despite finding that the NBA did preempt some UCL claims concerning banks' power to choose posting method).  The Office of the Comptroller of the Currency ("OCC") regulations establish that state laws on "[r]ights to collect debts" are not preempted.  12 C.F.R. § 7.40008(e)(4).  And, as the Ninth Circuit has recognized, the OCC "has specifically cited [California's Unfair Competition Law] in an advisory letter cautioning banks that they may be subject to such laws that prohibit unfair or deceptive acts or practices."  <u>Gutierrez</u>, 704 F.3d at 726 (citing <u>Martinez v. Wells Fargo Home Mortg., Inc.</u>, 598 F.3d 549, 555 (9th Cir. 2010)).

**B.  Visitorial Powers**

However, Defendant claims that at issue is "whether [Section 17200 of the UCL] may be enforced by <u>any state official other than the attorney general</u>, in this case specifically the District Attorney of Riverside County, against a national bank."  (Opp'n at 12 (emphasis in original).)  According to Defendant, the District Attorney's UCL prosecution is an exercise of visitorial authority, and is therefore preempted.  Plaintiff in turn argues that its enforcement of consumer protection state laws does not infringe on the visitorial powers established by the NBA.

The NBA provides that "[n]o national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have

---

[2] Defendant relies on <u>Cox v. ReconTrust Co.</u> to argue that preemption under the NBA is not limited to usury actions.  2010 WL 2519716, at *8 (D. Utah June 11, 2010).  But the Court finds that argument unpersuasive.  <u>Cox</u> concerned a state law imposing registration requirements to banks to transact business in the state.  The court there concluded that the NBA made clear that Congress intended the NBA to "exclusively control the area of allowing a national bank to transact business nationwide."  <u>Id.</u> at *6.  Even if that assessment were persuasive, it has no bearing in the area of debt collection, which the Ninth Circuit has repeatedly held is subject to state regulation.  <u>Bank of Am.</u>, 309 F.3d at 558–59.

been exercised by Congress. . . ."  12 U.S.C. § 484(a).  "[O]nly the OCC … may exercise visitorial powers with respect to banks."  12 C.F.R. § 7.4000(a)(1).  "Visitorial powers" include:

> (i) Examination of a bank;
> (ii) Inspection of a bank's books and records;
> (iii) Regulation and supervision of activities authorized or permitted pursuant to federal banking law; and
> (iv) Enforcing compliance with any applicable Federal or state laws concerning those activities, including through investigations that seek to ascertain compliance through production of non-public information by the bank[.]

Id. at (a)(2).  "State officials may not exercise visitorial powers with respect to national banks, such as conducting examinations, inspecting or requiring the production of books or records of national banks, or prosecuting enforcement actions, except in limited circumstances authorized by federal law."  Id. at (a)(1).

While OCC regulations suggest that state officials are foreclosed from "prosecuting enforcement actions,"[3] the Supreme Court has clarified that where "a state attorney general brings suit to enforce state law against a national bank, he is not acting in the role of sovereign-as-supervisor, but rather in the role of sovereign-as-law-enforcer[,]" so that "[s]uch lawsuit is not an exercise of 'visitorial powers[.]'"  Cuomo v. Clearing House Ass'n, L.L.C., 557 U.S. 519, 536 (2009).  Thus, the Supreme Court held that "the Comptroller erred by extending the definition of 'visitorial powers' to include 'prosecuting enforcement actions' in state courts[.]"  Id.  In so holding, the Supreme Court noted that "if a state statute of general applicability is not substantively pre-empted, then the power of enforcement must rest with the State and not with the National Government[.]"  Cuomo, 557 U.S. at 527–28.  "[A] sovereign's 'visitorial powers' and its power to enforce the law are two different things[,]" and "the [NBA] pre-empts only the former."  Id. at 529.

Congress codified this exception in the Dodd-Frank Act:

> "[N]o provision … which relates to visitorial powers or otherwise limits or restricts the visitorial authority to which any national bank is subject shall be construed as limiting or

---

[3] Plaintiff posits that under the OCC regulations, "visitorial powers" concerns "enforcing compliance with any applicable Federal or state laws concerning those activities" "authorized or permitted pursuant to federal banking laws."  12 C.F.R. § 7.000(a)(2)(iv). Plaintiff argues that those activities related to federal banking law do not include state debt collection laws.  But in Cuomo, the Supreme Court rejected that view, holding that the above phrase "cannot be interpreted to include only distinctively banking activities (leaving the States free to enforce nonbanking state laws), because if it were so interpreted subsection (a)(2)(iii), which uses the same terminology, would limit the Comptroller's exclusive visitorial power of 'regulation and supervision' to distinctively banking activities."  Cuomo v. Clearing House Ass'n, L.L.C., 557 U.S. 519, 532 (2009).  !

restricting the authority of any attorney general (or other chief law enforcement officer) of any State to bring an action against a national bank in a court of appropriate jurisdiction to enforce an applicable law and to seek relief as authorized by such law."

12 U.S.C.A. § 25b(i).  Thus, unlike Defendant claims, the NBA's visitorial limitations do not in fact "provide exclusive enforcement authority to the OCC, and completely preempt any attempt by a local state officer to bring enforcement actions against a national bank like Credit One." (Opp'n at 15.)  Rather, under Cuomo and the Dodd-Frank Act, it is clear that, at the very least, state "attorney general[s] (or other chief law enforcement officer[s])" may bring enforcement actions against banks without improperly infringing on the OCC's visitorial authority.

Defendant claims, however, that this exception does not extend to other state officers, such as the district attorney.  Defendant points to this Court's order on a motion to dismiss in related case Credit One Bank, N.A. v. Michael A. Hestrin, holding that district attorney Hestrin "fail[ed] to support his assertion that the Cuomo and Dodd-Frank exception for attorney generals or 'chief law enforcement officers' encompasses district attorneys at the county level." (Case No. 20-cv-2156, Dkt. No. 19.)  Therefore, the Court concluded that it would not "foreclose [Credit One's] claim that [Hestrin's] enforcement actions may usurp the OCC's exclusive visitorial powers."  (Id.)  But that conclusion is not determinative here, where The People's activities at issue differ (i.e., an investigative subpoena vs. a civil lawsuit asserting UCL claims), as does the relevant legal standard (i.e., on a motion to dismiss vs. a motion to remand).

After considering the claims at issue here, the Court is unpersuaded that the NBA completely preempts Plaintiff's prosecution of UCL claims.  As established above, the UCL is not substantively preempted by the NBA, nor does the NBA completely preempt all state enforcement actions against banks.  Moreover, none of Defendant's authorities establish that only state attorneys general may bring enforcement actions of non-preempted state laws like the UCL, or that this authority cannot be delegated to other state law enforcement officers.  While questions remain about the merits of Defendant's preemption defense, Defendant fails to establish that this case falls within the narrow exceptions to the well-pleaded complaint rule. Even if Defendant may set forth a colorable preemption defense, absent a showing of complete preemption, Defendant's removal is improper.  City of Oakland, 969 F.3d at 903.

The Court therefore GRANTS Plaintiff's Motion.[4]

//
//
//
//
//
//

---

[4] Because the Court finds that remand was improper, the Court need not reach Plaintiff's Younger abstention argument.

## V.    CONCLUSION

For the reasons established above, the Court GRANTS Plaintiff's Motion.  The July 26, 2021 hearing is VACATED.  The case is REMANDED to the Superior Court of California for the County of Riverside.

**IT IS SO ORDERED.**